IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | CRIMINAL NO. 2:16CR65-01 |
| STEVEN G. BAZEMORE, | ) | |
| | ) | |
| Defendant. | ) | |

GOVERNMENT'S POSITION ON SENTENCING

Now comes the United States, by its undersigned counsel, and offers the following with respect to the sentencing of defendant, Steven. G. Bazemore. For the reasons explained below, the United States agrees that the probation officer has correctly calculated the range under the Sentencing Guidelines as 24-30 months' imprisonment, but recommends a departure from that range consistent with its motion filed this day. The Government asks that the Court order the defendant pay $219,522.82 in restitution.

**I.     Factual Background**

While the defendant was employed as a title clerk in a Virginia Department of Motor Vehicle Select Office, he assisted his co-conspirators in acquiring at least 76 motor vehicle titles containing false, low mileage readings. Defendant's co-conspirator owned and operated a salvage car dealership and primarily dealt in older vehicles, some of which were once declared total loss vehicles by insurance companies. After defendant's co-conspirator rolled back the vehicles' odometers, he used fraudulent titles acquired with defendant's assistance to sell the vehicles, representing the cars had, on average, approximately 110,758 fewer miles than they actually did. Consumers who purchased a vehicle impacted by defendant's actions paid more for the car because the car's actual mileage was concealed by the fraudulent title. Additionally, many

1

consumers unexpectedly dealt with the safety issues and high repair costs often associated with high-mileage vehicles.

On May 26, 2016, the defendant pled guilty to a criminal information charging him with one count of conspiracy to commit securities fraud in violation of 18 U.S.C. § 371.

**II.     Standards Governing Sentencing**

It is well established that, although the Guidelines are advisory, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *See Gall v. United States*, 552 U.S. 38, 46, 49 (2007); *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). The Court should then consider the sentencing factors enumerated in 18 U.S.C. § 3553(a) and make an "individualized assessment" to determine the appropriate sentence to impose. *Gall*, at 49-50.

*1. Guideline Calculation*

We concur with the probation officer's total offense level calculation of 17, including probation's conclusion that the fraud loss falls between $150,000 and $250,000, corresponding to a 10-level increase. To arrive at the fraud loss figure, for cars where we had reliable pricing information, we compared the amount defendant's co-conspirator paid for a vehicle with the amount paid by a consumer following the odometer rollback. On average, defendant's co-conspirator paid $1,131 for each vehicle, but those vehicles were later sold, on average, for $3,818. The average increase—$2,687—is a reasonable estimate of amount of money each consumer paid beyond the value of the car. *See United States v. Alami*, Case No. 97-4024, 1997 WL 570867 (4th Cir. Sept. 16, 1997) (holding district court did not err by using this method to calculate loss caused by odometer fraud). Because Bazemore issued 76 titles, the total fraud loss attributed to his conduct is approximately $204,212.

*2. The § 3553(a) sentencing factors*

As indicated in the Government's motion filed under seal this day, a departure from the advisory sentence is appropriate. No further variance from the sentence requested in that motion, however, is warranted.

Consideration of the nature of the offense and the history and characteristics of the defendant, § 3553(a)(1), indicates the sentence requested in the Government's departure motion appropriately balances the severity of the offense and defendant's individual circumstances. The defendant used his position as a public employee to issue fraudulent titles, which were integral to ensuring that consumers believed the false, low mileage reflected on the odometers of the cars they were purchasing was accurate. Although defendant does not have a criminal history, his participation in the scheme spanned over a year, affected at least 76 vehicles, and resulted in dozens of consumers driving high-mileage vehicles, believing their cars had significantly fewer miles.

Similarly, the Government's requested sentence reflects the seriousness of this offense. As a result of defendant's actions, consumers who purchased a rolled back vehicle from defendant's co-conspirators paid more for the vehicle because the vehicle's actual mileage was concealed by the fraudulent title. Furthermore, current owners will find their vehicle's value diminished because it must be sold with a "True Mileage Unknown" title.

Defendant's victims also unexpectedly encountered the safety issues and high repair costs—as well as the emotional toll accompanying severe and unexpected car problems—that can accompany high-mileage vehicles. Two victims reported that their cars broke down on a highway. Another wrote that her vehicle had so many issues, it failed a Virginia safety inspection, but that she continued to drive the unrepaired vehicle because she could neither afford the repairs nor a different vehicle. Consumers also reported that their repair costs, at

times, exceeded what they paid for the vehicle. These costs included replacing a transmission and replacing an engine. One consumer let the car sit idle because the necessary repairs were too expensive. Some of the victims were those who could least afford the unexpected loss of a vehicle or high repair bill, including a disabled veteran, a single parent, a college student, and individuals on fixed incomes.

Finally, no other factor delineated in 18 U.S.C. § 3553(a) warrants either an upward or downward variance from the sentence requested in the Government's departure motion. A sentence consistent with the Government's departure motion will deter other individuals from engaging in similar conduct and adequately protect the public. Further, there is no need to deviate from the Government's recommended sentence to provide defendant with education or vocational training, medical care, or correctional treatment. Although restitution should be ordered in this case, its payment should not significantly factor into the sentence imposed by the Court.

**III. Conclusion**

For the reasons explained above, the Government believes a sentence consistent with its motion is sufficient, but not greater than necessary to satisfy the factors set forth in 18 U.S.C. § 3553(a).

    Dana J. Boente
    United States Attorney

    By:   /s/ John W. Burke
    John W. Burke
    Trial Attorney
    USDOJ – Consumer Protection Branch
    450 Fifth Street NW, Suite 6400 South
    Washington, DC 20001
    Tel: (202) 353-2001
    Email: Josh.Burke@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the September 14, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to the Carteia Basnight, counsel for defendant.

       /s/ John W. Burke
       John W. Burke
       Trial Attorney